UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | No. 1:25-cr-10070-JEK |
| HAIRON GUERRERO, | ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM AND ORDER ON DEFENDANT'S
### MOTION TO REVIEW AND REVOKE DETENTION ORDER

**KOBICK, J.**

Defendant Hairon Guerrero was charged in a three-count indictment in February 2025 with distribution of, and possession with intent to distribute, 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi). After a hearing in March 2025, Magistrate Judge Boal determined that his pretrial detention was warranted pursuant to 18 U.S.C. § 3142. Pending before this Court is Guerrero's motion under 18 U.S.C. § 3145(b) to review and revoke Judge Boal's detention order and instead place him on conditional pretrial release. For the reasons that follow, Guerrero's motion will be denied, and the detention order will remain in effect. Pretrial detention is warranted because Guerrero's favorable personal characteristics are outweighed by the seriousness of these charges, the strength of the evidence against him, and the existence of other evidence that he would pose a danger to the community if released on conditions.

### BACKGROUND

The following facts are drawn from the indictment, the transcript of the detention hearing, and the government's evidentiary submissions. *See United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990).

Guerrero allegedly distributed fentanyl to a cooperating source on three occasions in 2024: 50 grams on April 4, 100 grams on June 3, and 100 grams on July 19. ECF 19, at 7:14-20; ECF 1, at 1-3. All three purchases were audio- and video-recorded. ECF 19, at 8:1-2, 8:18, 12:12. Laboratory tests confirmed that the purchased drugs contained fentanyl. *Id.* at 12:12-14.

The cooperating source first purchased 50 grams of fentanyl from Guerrero for $1,750 in April 2024. *Id.* at 7:21-8:1. Two months later, in June 2024, the cooperating source met Guerrero outside of his residence at 14 Groveland Street in Mattapan, Massachusetts to purchase more fentanyl. *Id.* at 8:7-15. Guerrero shares this residence with his co-parent and five-year-old son, and his family operates a day care on the first floor of the building. *Id.* at 10:6-11, 15:7-10. Guerrero and the cooperating source traveled to the basement of the building, where Guerrero provided the source with 100 grams of fentanyl. *Id.* at 8:15-17. Guerrero informed the source that he had 150 more grams of fentanyl available to sell and had enough money to purchase another kilogram. *Id.* 8:19-23.

In July 2024, the cooperating source again met with Guerrero at the basement of his building, where he supplied the source with another 100 grams of fentanyl. *Id.* at 8:23-9:5. During this meeting, Guerrero told the source that he had recently sold three kilograms of fentanyl and was slowly collecting enough money to buy additional kilograms. *Id.* at 9:6-9.

On February 26, 2025, Guerrero was charged by indictment with three counts of distribution of, and possession with intent to distribute, 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi). ECF 1. Each of those counts carries a mandatory minimum sentence of five years and a maximum sentence of forty years in prison. 21 U.S.C. § 841(b)(1)(B)(vi).

On March 6, 2025, Guerrero was arrested at his residence in Mattapan, Massachusetts. ECF 28, at 1. While executing a search warrant there, law enforcement officers recovered two unregistered firearms: a Ruger handgun with an obliterated serial number and a .22 caliber American Tactical rifle, which had been stolen and appeared to have a silencer attached. ECF 19, at 9:15-25; ECF 28, at 2; *see* ECF 28-1; ECF 28-2. These guns were stored insecurely in a tennis bag underneath a bed in Guerrero's apartment. ECF 19, at 10:3-5. Law enforcement officers also uncovered a 50-round drum magazine for the rifle, three large-capacity magazines for a Glock firearm, and ammunition. *Id.* at 9:21-23, 10:1:5; ECF 28, at 2; *see* ECF 28-3; ECF 28-4; ECF 28-5. Guerrero does not have a license to carry firearms.

After his initial appearance that same day, Judge Boal held an arraignment and detention hearing on March 11, 2025. ECF 10, 14. On March 18, 2025, Judge Boal determined that pretrial detention was warranted and denied Guerrero's motion for pretrial release on conditions. ECF 18. She found "that no condition or combination of conditions will reasonably assure the safety of the community" because of "the potential lengthy sentence Guerrero faces," and because he "presents a significant danger to the community" given the "nature of the alleged crime, the amount of drugs involved in this case, his ready access to drugs, and the guns and firearm accessories that were found in his residence." *Id.* at 4.

On April 2, 2025, Guerrero filed a motion to review and revoke Judge Boal's detention order, requesting that he instead be placed on conditional pretrial release. ECF 23. After the government opposed that motion on April 15, 2025, the Court held a hearing on April 29, 2025 and took the motion under advisement. ECF 28, 29.

**STANDARD OF REVIEW**

A motion for district court review of a magistrate judge's order of pretrial detention "shall be determined promptly." 18 U.S.C. § 3145(b). This Court conducts "*de novo* review of the contested order." *United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The government bears the burden to prove, "by clear and convincing evidence," that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f); *accord United States v. Salerno*, 481 U.S. 739, 752 (1987).[1] To determine whether detention is appropriate, the Court must consider "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the [defendant]; (3) the history and characteristics of the [defendant] . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

Where "there is probable cause to believe that the [defendant] committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)," a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the [defendant]." 18 U.S.C. § 3142(e)(3)(A). The presumption shifts the burden of production to the defendant to offer "some [rebuttal] evidence." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) (quotation marks omitted). Once the defendant has met that burden, the presumption "does not disappear" and still "retains evidentiary weight," even though "[t]he burden of persuasion remains on the government." *Id.*

---

[1] Alternatively, and not applicable here, the government can show, by a preponderance of the evidence, that the defendant poses a risk of flight. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *see* ECF 28, at 7 ("the Government is not relying on risk of flight"); ECF 19, at 7:12-13 ("the government is seeking detention based on danger to the community").

## DISCUSSION

Section 3142(e)(3)(A)'s rebuttable presumption applies because the maximum term of Guerrero's imprisonment exceeds ten years. The indictment charges Guerrero with three violations of 21 U.S.C. § 841, each of which may be punished by "a term of imprisonment which may not be less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B)(vi); *see* ECF 1, at 1-3; *United States v. Vargas*, 804 F.2d 157, 163 (1st Cir. 1986) ("[A] grand jury indictment is sufficient to establish probable cause for purposes of triggering the rebuttable presumptions in section 3142(e)."). This presumption weighs in favor of pretrial detention. *See Dillon*, 938 F.2d at 1416 (applying presumption for indictment under the Controlled Substances Act and affording evidentiary weight to that presumption).

The balance of the section 3142(g) factors also supports pretrial detention. The first factor weighs in favor of detention because of the serious nature and circumstances of Guerrero's charged offenses. Guerrero is charged with distributing 250 grams of fentanyl over the course of four months. He also allegedly offered the cooperating source an additional 150 grams of fentanyl in June 2024 and explained in July 2024 that he had recently distributed three kilograms of fentanyl and was seeking to acquire more kilograms. As the First Circuit has observed, "[f]entanyl is an extremely dangerous drug, widely reputed to be the modern-day equivalent of the Grim Reaper." *United States v. Concepcion-Guliam*, 62 F.4th 26, 36 (1st Cir. 2023).

The second factor further supports detention because the weight of the evidence appears strong. According to the government, the cooperating source was searched before and after each controlled purchase and surveilled by law enforcement to and from each meeting with Guerrero. *See* ECF 19, at 12:9-11; ECF 28, at 3. The three purchases were audio- and video-recorded. And laboratory tests confirmed that the drugs obtained from these purchases contained fentanyl.

The third factor, which concerns Guerrero's history and characteristics, counsels against detention. Section 3142(g) directs courts to consider a defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g). Guerrero is a dual citizen of the Dominican Republic and United States. ECF 18, at 3. He resides with his mother, co-parent, and son at a house in Mattapan, which is jointly owned by him, his mother, and his sister, who lives nearby in Brockton. ECF 23, at 3. Guerrero's son suffers from a unique disability that requires around-the-clock care and can cause intellectual disabilities, weak muscle tone, and behavioral issues. *Id.* at 3-4. Guerrero is a high-school graduate and has completed one year of higher education in the business program at Regis College. ECF 19, at 16:22-23; ECF 23, at 5. He is employed by Weathervane, a company that encourages the use of green energy through Mass Save, and recently started a medical courier business. ECF 19, at 16:7-12. Further, Guerrero has no criminal record. *Id.* at 12:15-16, 17:4. The seven charges filed against him between 2004 and 2016 were either dismissed or resulted in findings of not guilty. ECF 18, at 3; ECF 23, at 8.

The fourth factor favors detention because Guerrero's alleged conduct indicates that he presents a danger to the community. Guerrero has allegedly sold significant quantities of fentanyl, including 250 grams to the cooperating source, and indicated an ability to obtain additional kilograms. He also distributed fentanyl to the cooperating source from a building where he resided with his minor child and his family operated a day care. Guerrero nonetheless maintains that while these charges are admittedly "concerning," his conduct is "nonviolent" and "his potential ability to acquire fentanyl nine months to a year ago has no bearing on whether he poses a risk of danger to the community now." ECF 23, at 7. But the First Circuit has repeatedly "recognized the

possession and distribution of fentanyl as 'extremely dangerous based on [the drug's] potency and known lethality.'" *United States v. De La Cruz*, 91 F.4th 550, 554 (1st Cir. 2024) (quoting *United States v. Heindenstrom*, 946 F.3d 57, 65 (1st Cir. 2019)); *see United States v. Arroyo-Reyes*, 32 F.3d 561 (1st Cir. 1994) (Rule 36 Decision) ("Congress has made it clear that an especially significant danger to the community is the risk that the drug network will continue to function while defendant awaits trial." (quotation marks omitted)).

Guerrero's possession and storage of firearms and firearm accessories also suggest that his release would pose a danger to the community. He improperly kept two unregistered firearms—a handgun with an obliterated serial number and a tactical rifle that was reportedly stolen and outfitted with a silencer—as well as multiple large-capacity magazines and ammunition in an unlocked bag underneath a bed in his apartment. True, the government does not allege that he has "used, carried, displayed, brandished or threatened the use of the firearms in any manner during the commission of any offense." ECF 23, at 7. But these guns and firearm accessories, when combined with the large amounts of fentanyl he has allegedly distributed, pose a significant danger to the community. *See United States v. Elliott*, 113 F.4th 168, 175 (1st Cir. 2024) ("The lethality of this conduct hardly can be doubted" given "the danger that the appellant had created for himself and the community by distributing fentanyl and possessing firearms with a large supply of ammunition."); *United States v. Sanchez-Badillo*, 81 F. App'x 360 (1st Cir. 2003) (affirming pretrial detention where appellants were "charged with serious crimes involving large amounts of drugs"). Further, Guerrero's storage of the firearms and accessories in his apartment in an unlocked bag indicates a disregard for the safety of his young child.

On balance, the section 3142(g) factors weigh in favor of pretrial detention. Guerrero's steady work, educational background, and meaningful ties to the community are outweighed by

the seriousness of the charged fentanyl offenses, the strength of the evidence against him, and the dangerousness posed by his release. *See United States v. Portillo-Camargo*, No. 22-1244, 2022 WL 5434556, at *3-5 (10th Cir. Oct. 7, 2022) (affirming pretrial detention on dangerousness grounds where defendant was charged in part with conspiracy to distribute and possess with the intent to distribute 400 grams of fentanyl); *United States v. Valdez Fernandez*, No. 17-cr-10389-DJC-1, 2023 WL 2309972, at *2-4 (D. Mass. Mar. 1, 2023) (same); *United States v. Bean-Bousseau*, 626 F. Supp. 3d 475, 476-78 (D. Mass. 2022) (same involving charge of 40 grams of fentanyl); *United States v. Pimentel*, No. 24-cr-10281-IT, 2025 WL 50366, at *1, *4 (D. Mass. Jan. 8, 2025) (same where defendant allegedly "arranged for a source to provide [a] co-defendant with fentanyl in quantities of 40 grams, 50 grams, and 100 grams"). Accordingly, based on its *de novo* review of the record and the section 3142(g) factors, the Court concludes that pretrial detention is warranted because clear and convincing evidence exists that Guerrero poses a danger to the community and, given the rebuttable presumption of section 3142(e), that no condition will reasonably assure the community's safety.

## CONCLUSION AND ORDER

For the foregoing reasons, Guerrero's motion to review and revoke Judge Boal's pretrial detention order, ECF 23, is DENIED. The detention order shall remain in place pending trial.

SO ORDERED.

Dated: May 1, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE